Booth, Ohief Justice,
delivered the opinion of the court:
The letters-patent #1081199 involved in this case were granted on December 9, 1913, upon an application filed therefor July 12, 1909. The applicant was George Sydney Binckley, a citizen of the United States, and soon after filing his application he assigned to Tracy C. Becker and Raymond Ives Blakeslee each a one-third interest therein. These three plaintiffs jointly prosecute this suit, alleging that the United States, in the construction of the Coolidge Darn in Arizona, infringed their patent rights.
It is common knowledge that a dam “is an artificial barrier”, designed to forestall the flow of a stream, confine the same within limits, and thereby raise its level. Pools of varying levels are created by the upstream surface of the dam and the water of the stream brought as far as may be under control at the point of its construction. It has long been recognized that two general types of dam construction prevail; they are known as the gravity and the arch dam.
A gravity dam, as its name indicates, is one, as a matter of short description, which is held in place by gravity. It is composed of earth, masonry, or concrete, with an inclined downstream face and a vertical or inclined upstream face. The arch type is, as its name indicates, a curved structure generally constructed of masonry or concrete, with its convex surface upstream. This type, if a single arch one, is held in place by abutments or buttresses on either side of the stream to be dammed, and, in the event of a multiplicity of arches, the dam stresses “are transmitted to a plurality of abutments or buttresses across the stream.”
It is at once apparent that the type of dam construction is dependent upon the existing situation at the stream where it is to be constructed. Whether the type to be adopted shall be one or the other, or partake of characteristics common to both of the types mentioned, is determinable from *465 the existing factors of width of stream, necessary height, inherent character of foundation on which to rest the same, materials to be used, and additional elements present at the site of the work. There is no one type which will universally meet all locations, or rigidly fix the character of materials to be used.
The art exacts of skillful engineers a comprehension of the stresses of impounded water against the upstream surface of the dam, fraught with the menace of the ever-present tendency to overturn the structure or move it bodily downstream. Towards overcoming the matter of expense involved, as well as increasing the stability and strength of dams, the progress of the art from the old to the new types now in existence constitutes a rapid advance as disclosed by the art itself.
The patent in suit contains a single claim. It is manifest from the specifications that the inventor was striving to create a form of dam construction which would not only effectually withstand the pressure of the impounded water against its upstream face but also result in a structure of much diminished transverse dimensions which would materially lessen the cost thereof, and due to its peculiar form of construction employ the impounded water in aid of its stability. A “shell-like” structure was one and the principal feature of the invention. Doing away with the massive formations previously adopted was a claimed advance in the art.
The patentee filed his application on July 12, 1909, and thereafter it encountered many difficulties from Patent Office actions. Six claims appear in the original application (Finding 3). These claims are expressly limited to a dam having a conoidal surface opposed to the service pressure thereon, i. e., the claims cover the contour and disclosed form of construction applied to the upstream face of the dam. The specifications state with reference to the illustrations inserted therein, “The forward face c has an increasing radius from the crown a toward the base 5.”
The specifications and claims clearly disclose the application of the principle of a conoidal surfaced upstream face of a dam throughout its entire height from its crown to its *466 base. As to “the rearward face d of the dam [it] may be of any predetermined and desired formation in conformity with the massing of the constituent material of the dam between the faces c and dP
The advantages claimed to accrue from this type of construction disclosed in the specifications are first, a substantial reduction of the transverse dimensions of the dam, i. e., the erection of a more or less “shell-like” structure, eliminating to a great extent the massive characteristics of the old form and saving in the cost thereof, and, second, the use of the pressure of the impounded water to add to and effectually secure the stability of the structure, forestall its overturning and consequent demolition. By conceiving the cone or conoid principle in dam construction the inventor claims to have introduced into the art a new and novel utilization of said principle.
The Patent Office, citing prior art, rejected all six claims of the application, and the applicant acquiesced in this office action. Subsequently five of the claims were amended by the applicant, and again all six were rejected upon cited prior art, and again the applicant acquiesced in this office action by cancelling all his claims, and filing one claim as a substitute. This one claim reads as follows:
A dam having a horizontal curvature the radius of each face of which increases downwardly.
A patent to one Schmolz was cited as anticipatory of the claim by the Examiner, and it too was rejected.
Finally the applicant, acquiescing in all previous rejections, filed the following single claim as amendatory of the last rejection:
A dam having a horizontal curvature the radius of each face of which increases downwardly through a portion of the height thereof,
and upon this claim the patentee relies to establish infringement by the United States.
In the light of Patent Office actions and the applicant’s acquiescence to the same, the crucial question arises, i. e. What did the patentee invent ? The adaptation of the cone or conoidal principles to dam construction was old. The *467 patentee did not originally claim said principles in any novel way sufficient to escape the citations of prior art. Finally forced to cancel the broad claims of his original application, he limits the invention to the .application of the cone or conoidal principles of dam construction to each face of the dam and extends it downwardly, each face of the curvature to possess an increasing radius through a portion of the height of the dam.
The above statement is amply supported by the record. Plaintiff Binckley’s original claims do not speak of a laterally curved and vertically inclined surface having a downwardly increasing radius opposed to the service pressure thereon. The disclosure is confined to the contour of the upstream face of the dam, and clearly describes the application of the cone or conoidal principle of construction to this face of the dam without detailed specification as to an increasing radius applicable to the same.
“The invention”, as the specifications state, “consists in the novel utilization of the principle of the cone or conoid in dam construction, and embodied in the provision, formation, construction and combination of parts and features all as hereinafter described, shown in the drawing and finally pointed out in claim.”
The drawings, specifications, and original claims negative a conception of the cone or conoidal principle of dam construction as applicable in any other way than “the general form of a truncated fragmentary cone or conoid”, as illustrated in Findings 8 and 9 and described in Finding 10.
The inventor did not originally conceive or disclose a form of dam construction embodying a plurality of curvatures of varying radii going to make up the upstream face of the dam. On the contrary, Fig. 2 of the specifications discloses no more than, as stated, “approximately the arc of a circle having its center downstream.” The principle of conoidal formation of the upstream face of the dam originally disclosed comprehended “a laterally curved and vertically inclined” upstream face of dam extending from bank to bank of the stream, its contour varying only in accord with the transverse dimensions of the structure itself.
*468 To meet the references of the Patent Office which had resulted in tlie rejection of all of the original claims five of them were amended by the applicant. The amendments of three of the claims disclosed for the first time the adaptation of the conoidal principle to the upstream face of the dam “having a downwardly increasing radius.” As to another claim, the amendment inserted simply sought to more specifically point out the precise formation of the conoidal dam. Originally the applicant had claimed “a fragmentary conoidal dam having an inclined and curved surface opposed to the service pressure.” The chosen amendment claimed “A fragmentary wpright conoidal dam, etc.”, and the final amendment resulted in a 'claim for dam construction wherein the curving between the banks of the stream was to possess “a vaxying radius.”
The departure sought from the original claims by the above amendments was to embrace within the invention not only the original principles of curvature or conoidal formation for the upstream face of a dam, but in addition thereto increase the radius of the curvature downwardly. In other words, the novelty claimed consisted in a dam formation for the upstream face of the same wherein its cone-shaped surface would increase in radius from its crown downwardly. All that the amendments accomplished was, to say the most, a change from the general characteristics of an arc of a circle to precisely the identical formation with proportionately increasing radius as construction proceeded from the crown of the dam downwardly.
As previously observed, the amended claims of the inventor were rejected by the Patent Office on prior art references, and by successive rejections of claims, in which the applicant acquiesced, the field for invention, predicated upon a new and novel utilization, of the cone or conoidal formation in dam construction, was decidedly restricted. The applicant had directed his efforts toward the formation of the upstream face of a dam, and in order to differentiate from cited references all previous claims were canceled by him and a single one substituted.
*469 The first substituted claim did no more than apply the principles of cone or conoidal construction to both the up and downstream faces of a dam, giving to each a downwardly increasing radius. It would be difficult to ascribe novelty to the subject-matter of this claim even in the absence of prior art references. However, the Patent Office rejected the claim and thereafter the plaintiff Binckley was granted the patent in suit which contains the one amended claim now relied upon to establish infringement.
The Supreme Court in numerous decisions holds that when an applicant for a patent acquiesces in the rejection of his claims by the Patent Office he is “estopped to claim the benefit of his rejected claim or such a construction of his present claim as would be equivalent thereto.” Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 429, and authorities therein cited. The application of this rule to the patent in suit restricts the granted patent to an adaptation of the cone or conoidal form of construction wherein the radius or radii of the curvature or curvatures increase downwardly through only a portion of the height of the dam.
There has never been any actual reduction to practice of the patent in suit either by the patentee or anyone else. The court has found as a fact that the phraseology of the claim is ambiguous to those skilled in the art. The specifications do not disclose or teach the meaning of the words “through a portion of the height thereof.” It is true Fig. 1 of the drawings discloses a dam of 30 feet in height and the horizontal radius of the downstream face increases downwardly approximately 22.5 feet or about 75% of the dam’s total height.
A general statement such as herein involved, which obviously comprehends either a maximum or minimum increase in the radius of the curvatures of both faces of the dam so long as any portion of the structure remains unaffected thereby, leaves those skilled in the art in ignorance as to just how they may proceed in dam construction without incurring the consequences of infringement. What portion, the upper, the center, or the lower, is to be increased *470 in radius? What proportion of the height of the dam constitutes a portion? The specifications state
The rearward face d of the dam may be of any predetermined and desired formation in conformity with the massing of the constituent material of the dam between the faces o and d,
notwithstanding the claim itself limits the formation of both faces to identical forms of construction.
It is difficult to follow plaintiffs’ contention that the patent in suit embodies a form of dam construction which in a large measure minimizes the cost of the same when compared with what is termed a standard practice in the art. The plaintiff Binckley in his original application emphasized the substantial saving in cost resulting from the adoption of his then broad claims, and this novel feature of the patent continues in the specifications, attributing the result to the final amended claim as well as to the original ones eventually canceled.
If the original claims were designed to cover a form of construction which did result in saving in the cost thereof, that feature of the invention was old. The adaptation of the cone or conoidal principles to dam construction was old, and inherent therein was and obviously is the feature of economy in construction. We have no facts of record which from a probative point of view establish the fact that the increasing of the radius or radii of the curvature or curvatures of a dam through a portion of the height thereof materially increases the saving in the cost over a cone or conoidal form employed without variation in radius through the entire height of the dam. One, so far as this record is concerned, is the equal of the other, and manifestly the latest one presents nothing new.
The plaintiffs introduced evidence to establish the fact that in numerous instances of dam construction wherein the “standard practice” had been employed the cost was in excess of what it would have been had the patent in suit been adopted. Aside from the long since and well established engineering principles in the art no standard practice with respect to dam construction prevails. The various *471 and always differing local conditions render it impossible to compare with any degree of accuracy the cost of one dam with another. Too many factors enter into the issue to predicate uniformity of cost or design (Finding 5).
Patent monopoly is granted upon the claims. Under the statute the claims define the invention. An analysis of the claim in suit, in the light of its development, and the specifications of the application upon which it was allowed leads inevitably to the conclusion that it does not define invention. The addition of an indefinite phrase to a rejected claim, which does not in any way result in some functional advancement, will not save the same from a contention that it is invalid.
The specifications point out no advantage to accrue from a conoidal form of dam construction wherein the radius of the same increases downwardly through a portion of the height of the dam. The patent signally fails to teach those skilled in the art wherein the subject-matter of the claim applied to dam construction will function in any respect differently from what was originally claimed as novel and rejected as old.
The principles of conoidal formations disclosed in the pat-entee’s specifications and the novelty claimed in their adaptation to dam construction are not changed in character or made to function in such a way as to accord to the user a single advantage in any respect, which would not obtain without the amendment to the one claim in suit. The record establishes this fact. A modification of an existing form of dam construction which brings about no new results is not invention.
The patentee having voluntarily canceled certain drams and amended a substituted one to meet repeated rejections of the same by the Patent Office upon references to the prior art, subjects his claim, when challenged as to validity, to a strict construction, and whatever elements of the invention the patentee relinquished are effectually eliminated from the patent. John I. Paulding, Inc., v. Leviton, 45 Fed. (2d) 125; I. T. S. Co. v. Essex Co., 272 U. S. 429. The evidence in the case not only negatives the existence of *472 novelty in the introduction of conoidal formations with increasing radius through a portion of the height of the dam applicable to each face thereof, but preponderates in establishing the fact that it fails to accomplish what it was designed to accomplish as set forth in the patent specifications.
PRIOR ART
It is not essential to discuss in detail all prior art patents cited in the record. We are convinced that two citations completely anticipate the patent in suit. What may be conveniently designated as the Ithaca dam is disclosed in a publication known as- Transactions of the American Society of Civil Engineers, published in 1904, and thereafter on February 16,1905, deposited in the Library of Congress. Findings 23, 24, 25, 26, and 27 depict in dimensional detail the exact structure embodied in the dam formation set forth in the publication. Beyond a doubt, Finding 27 is sustained by the record.
Counsel for plaintiffs very vigorously challenge the availability of the publication mentioned in Finding 13 as a reference. The Ithaca Dam project is characterized as a “dream, which finds its theoretical and empirical speculations embodied in the proceedings of a certain engineering society to which the public has had no usual and suggested access.” Again it' is averred that no such dam was ever built because of a protest against its installation, and in any event whatever occurred resulted in an abandoned experiment, abandoned because of its dangerous character.
Whether the Ithaca dam was or was not built is unimportant. The defense relied upon is prior publication (Finding 27). The plaintiffs seemingly overlook the fact that Bincldey did not build a dam in accord with his patent, and, so far as this record discloses, no one else applied it to dam construction. The patent was nearly thirteen years old when the contract for the Coolidge Dam was let.
While non-user will not deprive the owner of patent rights, it does under certain circumstances preclude a broad construction of the patent claims. Westinghouse Electric & *473 Mfg. Co. v. Toledo P. C. & L. Ry. Co., 172 Fed. 371. This is the extent of the rule as applicable to patented invention,, and manifestly reference to it to discredit a prior publication is inapposite. See also Hartford Empire Co. v. Obear Nester Glass Co., 51 Fed. (2nd) 85, 91.
In the case of Thacher v. Inhabitants of Town of Falmouth, 235 Fed. 151, 158, the court said:
The question in each is whether sufficient information is given to enable one skilled in the art to make and use the invention disclosed. It is not necessary to show that the device illustrated has been in use, if the publication is made and the information conveyed to the public is sufficient. As bearing on this question the publication is not invalidated by the fact that it was made for the purpose of giving the result of a series of tests. Courts have discredited works of experimentation by patentees, because experiments are made, not for the purpose of commercial use, but merely to see whether the inventors making the experiments will apply for a patent. What the courts have said upon this subject bears upon the question of public use, and does not apply to a case where the court is seeking to find whether an alleged improvement has been discovered in a printed publication. In Walker on Patents (4th Ed.) § 95 et seq., and cases cited thereunder, is found a discussion of the effect of experimental use as opposed to public use; but this has nothing to do in deciding whether a patentee’s alleged invention “was described in any printed publication in this or any foreign country before his invention or discovery thereof.” (Affirmed 241 Fed. 869.)
Just why the publication should be designated as speculative and theoretical is not apparent from the record. The-Engineering Society which published it was founded in 1852, and the publication itself in most careful dimensional detail, with added illustrations, sets forth for the benefit of those skilled in the art a type of cone or conoidal dam construction identical in all respects to plaintiff Binckley’s application. This publication teaches the adaptation of cone or conoidal formations in dam construction. It was filed for copyright purposes in the Congressional Library subsequent to publication, with permission granted to- *474 others to reprint the same provided only the title of the paper and the name of the author be given. Berlinger v. Busch Jewelry Co., 48 Fed. (2d) 812, Jockmus v. Leviton, 28 Fed. (2d) 812.
In Bobinson on Patents, Yol. 1, pp. 446, 447, five essential elements are set forth apropos the defense of prior publication:
To have this effect the publication must be: (1) A work of public character, intended for general use; (2) Within reach of the public; (3) Published before the date of the later invention; (4) A description of the same complete and operative art or instrument; and (5) So precise and so particular that any person slrilled in the art to which the invention belongs can construct and operate it without experiments and without further exercise of inventive skill. Unless a publication possesses all these characteristics it does not place the invention in the possession of the public, nor defeat the claim of its re-inventor to a patent.
Doubtless the plaintiffs rely upon the last element to sustain the contention that the publication cited does not meet the requirements of the established rules.
The prior publication of the Engineering Society is complete in every detail. Pressure stresses are computed and the illustration, facing this page, discloses a dimensional form of construction infinitely more in detail and preciseness than found in the specifications of the ordinary patent application. The article is exhaustive and teaches a form of dam construction which coincides with remarkable exactness to the specifications and claim of the patent in suit.
Prior patents in the art are cited in Finding 21. To discuss them in view of what has been said with respect to a. prior publication would serve only to prolong this opinion. They are set forth in the findings and available as prior art.
Additional defenses are interposed. We do not refer to them for the court’s view of the case is expressed in what has been said. The petition will be dismissed. It is so ordered.
Whaley, Judge; Williams, Judge; LittletoN, Judge; and GREEN, Judge, concur.

*475