Nicholas STRAUSSLER
v.
UNITED STATES.
No. 209-59.

United States Court of Claims.
June 7, 1961.

828

Paul M. Rhodes, Washington, D. C., for plaintiff.

E. R. Weisbender, Washington, D. C., with whom was Asst. Atty. Gen. William H. Orrick, Jr., for defendant.

JONES, Chief Judge.

This is a suit for infringement of United States Letters Patent 2,398,057 issued to the plaintiff on April 9, 1946, and disclosing a propulsion device for amphibious motor-driven vehicles. The plaintiff claims that the defendant has infringed this patent by the manufacture of such military amphibious equipment as the "Otter," the "Duck," and the T-46E-1 cargo carrier. The defendant has not answered the complaint, but under Rule 51(b), 28 U.S.C.A., has moved for summary judgment on the grounds that the plaintiff is barred from asserting infringement under the doctrine of file-wrapper estoppel.[1] The facts are as follows:

On May 19, 1943, the plaintiff, a British subject, filed an application for a United States patent on certain features of a propulsion device for amphibious vehicles which he alleged he had invented. Stating only the most important ele-

---

[1] The defendant also bases its motion on the grounds that in so far as the complaint is based on 35 U.S.C. § 181 it is barred by the statutes of limitations, 28 U.S.C.A. § 2501 and 35 U.S.C. § 183; and that the complaint fails to state a cause of action under the Mutual Security Act of 1951, 65 Stat. 373, as amended, 22 U.S.C.A. § 1758. The plaintiff concedes these points in his brief.

ments, the device included, in a somewhat linear arrangement, a drive shaft, a driving clutch member, a driven clutch member, a propeller shaft and a propeller. The drive shaft and the propeller shaft were linked together by a hinge directly over the two clutch members in such a way that the propeller shaft and the attached propeller could be raised and lowered. Further, since the hinge was placed directly over the clutch members, raising the propeller shaft disengaged the two clutch members and terminated the transmission of power from the drive shaft through the clutch and the propeller shaft to the propeller. Similarly, when the propeller shaft was lowered the clutch members would engage and motive power could be transmitted to the propeller. The arrangement was said to be useful for powering amphibious vehicles. In deep water, the propeller would be driven and would function precisely as a ship's propeller. In shallow water or on land, the propeller and its shaft could be raised out of possible contact with the ground.

In a modification of this basic combination the plaintiff disclosed that the propeller shaft could comprise two sections connected by a universal joint. Thus modified, the entire propeller shaft could be lowered into position, the clutch members engaged and power transmitted to spin the propeller. In addition, and at the same time, the propeller and the distal part of the propeller shaft could be swung laterally. The driver, by swinging the propeller from side to side, could effectively steer the vehicle in the water much in the manner that a small fishing boat may be steered by swinging the outboard motor. In sum, then, the propeller shaft could be swung up and down, in and out of driving engagement, and from side to side for steering. The arrangement of the two pivot points relative to the vehicle was not alleged to be significant. In this regard the plaintiff stated the following in the last paragraph of the original specification as filed:

"The invention is not confined to the relative arrangements of the vertical and horizontal pivotal axes as described above, for by modifying the construction and arrangement of the parts they may be transposed so that the horizontal pivotal axis is arranged aft of the vertical pivotal axis. With such a modified form the universal shaft coupling would be arranged with its centre in line with the vertical pivotal axis but forwardly of the dog clutch which would be located immediately beneath the horizontal pivotal axis. Also as will be understood the construction of the casing would be modified accordingly and the universal shaft coupling will connect the forward section of the propeller shaft to the rear end of the shaft g. Further only the rear section of the propeller shaft would be swung upwardly when the propeller is lifted for land use of the vehicle."

The pivot permitting vertical swing of the shaft could be closest to the end of the vehicle with the pivot permitting lateral swing aft [modification I] or the pivot positions could be reversed [modification II].

The plaintiff originally filed six claims with his patent application. Claims 1, 2, and 6 were drawn broadly to the combination described first above, that is, to the device wherein the propeller shaft could only be moved up and down. Claims 3, 4, and 5 were dependent on claim 1 but were drawn to include the additional element which permitted lateral swing as in modification I. None of the claims was specifically drawn to the arrangement of elements which was described by the plaintiff in the last paragraph of the original specification (quoted above) and which we have called modification II.

In the first action on the application, the patent examiner rejected claims 1, 2, 3, and 6 as fully met by prior art. Claims 4 and 5 were rejected as based on subject matter not fully illustrated or described, but the examiner stated that these claims "appear to be clear of the art." Furthermore, the examiner stated

that the arrangement of elements which was described in the last paragraph of the original specification "must also be illustrated or else all reference to the same must be eliminated from the disclosure."

The plaintiff responded to the first Patent Office action by cancelling all six of the original claims and substituting claims 7 and 8. Again, neither of these two claims was drawn specifically to modification II. The examiner in the second Patent Office action stated that the new claims were allowable and repeated his requirement either for illustration or cancellation of modification II. Plaintiff did not supply the additional drawings but instead asked that all mention of modification II be stricken from the specification. With this amendment, all of the examiner's objections were overcome and the patent was issued. Claims 7 and 8 of the application became claims 1 and 2 of the patent. They are as follows:

"1. In an amphibious motor driven vehicle, a vehicle body, a driving clutch member mounted in said body, a propeller shaft, a propeller carried by said shaft, a casing rotatably receiving said shaft, a driven clutch member carried by said shaft, and means mounting said casing to swing about a horizontal axis on said body whereby the driven clutch member may be swung into engagement with the driving clutch member with the propeller occupying an operative position and out of engagement with the driving clutch member with the propeller assuming an elevated inoperative position.

"2. An amphibious vehicle as claimed in claim 1 wherein said propeller shaft is composed of two sections coupled by a universal joint, the casing including front and rear sections the front casing section being connected with the mounting means and the rear section being movable about a vertical axis passing through said universal joint."

Sometime after October 11, 1953, within 6 years of the date of filing of the complaint in this case, the defendant manufactured several amphibious vehicles which embodied a propulsion device similar to the one disclosed by the plaintiff in his patent. The plaintiff claims that the defendant's device is equivalent in all respects to his patented device and that the defendant has infringed his patent. The defendant contends that its device is identical to modification II, which the plaintiff originally described in his patent application, but since the plaintiff struck all mention of this modification from his application in response to rejections by the Patent Office, he is now estopped from asserting that the defendant's device lies within the scope of the patent claims.

Whether the claims of the patent read directly on the defendant's propulsion device, or whether this device is the equivalent of the plaintiff's patented device are questions of fact, Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 1950, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097, and will not be decided on this motion. The issue for determination now is whether the plaintiff is estopped from claiming that the defendant's device, an admitted modification of the plaintiff's patented device, lies within the scope of the claims of the patent because the plaintiff failed to illustrate this modification in his patent application, because he struck all mention of this modification from his application, and because he accepted the patent with this deletion.

Estoppel in patent law is simply an application of familiar equitable principles to the technique of Patent Office prosecution and patent infringement litigation. A person in an infringement suit may not take a position inconsistent with the one he maintained before the Patent Office in the proceedings which led to the issuance of his patent. The defendant in a thorough brief emphasizes the frequently recited rules that where an applicant for a patent, in response to rejections by the Patent Office, amends

his application by cancelling entire claims or objectionable features of claims, or by introducing new elements of limitation into the claims, the claims as allowed must be interpreted with reference to those claims which have been cancelled or rejected. Exhibit Supply Co. v. Ace Patents Corp., 1942, 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736; Martin v. United States, 1938, 86 Ct.Cl. 311, at page 379. Allowed claims may not be construed to have the same meaning which they would have had without amendment. Schriber-Schroth Co. v. Cleveland Trust Co., 1940, 311 U.S. 211, 61 S.Ct. 235, 85 L.Ed. 132. A patentee may not resort to the doctrine of equivalents to recapture claims which he has surrendered by amendment, Smith v. Magic City Kennel Club, Inc., 1931, 282 U.S. 784, 51 S.Ct. 291, 75 L.Ed. 707, and he is estopped by the file wrapper to contend for such construction of the claims as would have the effect of disregarding the amendment. Keystone Driller Co. v. Northwest Engineering Corp., 1935, 294 U.S. 42, 55 S.Ct. 262, 79 L.Ed. 747; Binckley v. United States, 1936, 83 Ct.Cl. 444, at page 471. See generally, 69 C.J.S. Patents § 212. While we do not dispute the value of these rules in guiding the proper construction of amended claims, we do not believe they apply in the instant case.

The claims which the plaintiff submitted with his patent application did not mention the specific arrangement of elements of modification II. Six claims were filed originally. Three claims covered the basic combination and three claims included an additional element (a universal joint) in the propeller shaft. Following a rejection by the patent examiner, these claims were cancelled and two new claims were submitted. One claim again covered the basic combination and one claim included additionally the universal joint in the propeller shaft between the clutch and the propeller. No claim was ever filed, and of course no claim was ever cancelled, which was drawn specifically to the combination we have designated as modification II. The only reference to modification II was in the original specification.[2]

The defendant would have us treat the cancellation of part of the specification as equivalent to the cancellation of a claim, and would extend the rules stated above to the situation before us now. It does not appear to us, however, that the conditions which require careful vigil over the development of the claims apply equally to the specification. The scope of the patent monopoly must be ascertainable with a high degree of certainty or the patent will frustrate rather than promote the progress of science and the useful arts. The claims become of utmost importance, for they are of the nature of metes and bounds and describe for the world the area of the invention beyond which no one may go without trespassing. Altoona Publix Theatres, Inc. v. America Tri-Ergon Corp., 1935, 294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005; Ethyl Gasoline Corp. v. United States, 1940, 309 U.S. 436, 60 S.Ct. 618, 84 L.Ed. 852; Marconi Wireless Telegraph Co. of America v. United States, 1943, 99 Ct. Cl. 1, affirmed, 320 U.S. 1, 63 S.Ct. 1393, 87 L.Ed. 1731; Stuart Oxygen Co., Ltd. v. Josephian, 9 Cir., 1947, 162 F.2d 857. People naturally rely on the wording of the claims. They are also entitled to rely on language deliberately excluded from the claims because this tends to indicate what the inventor has agreed his invention is not.

The specification serves a purpose different from the claims; it does not necessarily measure the invention. Continental Paper Bag Co. v. Eastern Paper Bag Co., 1908, 210 U.S. 405, at page 419, 28 S.Ct. 748, at page 751, 52 L.Ed. 1122; Kuhne Identification Systems v. United States, 1936, 82 Ct.Cl. 237, at page 258. It must only disclose an operative embodiment of the invention in such a manner that one having ordinary skill in the art will be taught how

2. We use the word "specification" throughout this opinion to indicate the descriptive material in the patent application but not the claims.

to utilize the invention. 35 U.S.C. § 112. When the nature of the case admits, an applicant for a patent shall furnish drawings. 35 U.S.C. § 113. However, the Patent Act does not require the specification to contain an illustrated description of every possible infringing device in order that a patentee be protected against future infringement. Thurber Corp. v. Fairchild Motor Corp., 5 Cir., 1959, 269 F.2d 841.

■ Of course, a patentee in an infringement suit may not claim as his invention that which he has specifically disclaimed in the patent specification regardless of the scope of the allowed claims. Manton-Gaulin Mfg. Co. v. Wright-Zeigler Co., 1 Cir., 1921, 271 F. 391. Furthermore, a patentee is bound by even self-imposed limitations which he notes in the specification. Bergman v. Aluminum Lock Shingle Corp. of America, 9 Cir., 1957, 251 F.2d 801. But we do not believe that cancelling a part of the specification referring to an optional arrangement of elements in a patentable combination, as an alternative to filing additional drawings, has the effect of a disclaimer or a limitation of the claims.

■ In this case nothing was amended, cancelled, or withdrawn to avoid an art rejection directed specifically to modification II. We think it cannot fairly be said that the plaintiff is trying to recapture claims which he has surrendered by amendment. There is nothing on which an estoppel can be based. Any other decision would carry the doctrine of file-wrapper estoppel beyond the limits set out in the previous cases and beyond what we believe fairness to the parties requires. The prosecution of an application before the Patent Office is a complicated proceeding where the penalties for misstatements and omissions must frequently be stringent. We do not believe it would further the objectives of the Patent Act or serve any other useful purpose to bar the plaintiff in this suit by attaching overriding significance to the cancellation of material from the specification, an act heretofore commonplace in patent prosecution.

The claims of the patent are entitled to be read in the light of the specification as it is without specifically excluding from their scope an arrangement of elements as in modification II.

We do not now determine whether the claims of the patent read directly on the defendant's propulsion device, or whether this device is the equivalent of the plaintiff's patented device. These still remain questions of fact on which the parties are entitled to make their proofs.

The defendant's motion for summary judgment will be denied.

It is so ordered.

DURFEE, LARAMORE, MADDEN and WHITAKER, Judges, concur.