**508**

COLOURPICTURE PUBLISHERS, INC.,
Plaintiff,

v.

MIKE ROBERTS COLOR PRODUC-
TIONS, INC., Defendant.

Civ. A. No. 66–819–G.

United States District Court,
D. Massachusetts.

Sept. 24, 1970.

George L. Greenfield, Stanley Sacks,
Wolf, Greenfield & Hieken, David Wolf,
Boston, Mass., for plaintiff.

Melvin R. Jenney, Kenway, Jenney &
Hildreth, Boston, Mass., for defendant.

OPINION

GARRITY, District Judge.

Plaintiff owns United States letters of patent No. 3,259,304 which were issued on July 5, 1966 to its president, Lawrence F. Tichnor, on application filed on May 25, 1965 and has sued the defendant company for patent infringement. The patent at issue is for a strip of postcards and both parties are manufacturers and distributors of postcards. Defendant filed a motion for summary judgment on the ground of invalidity of the patent, which motion was allowed by the court, and judgment entered for the defendant. On appeal, summary judgment for the defendant was reversed, Colourpicture Publishers, Inc. v. Mike Roberts Color Productions, Inc., 1 Cir., 1968, 394 F.2d 431, and the case remanded for trial. Trial has been had before a different judge of the court. By agreement of the parties trial was restricted to issues relating to the validity of the patent. Several witnesses testified, many exhibits were received and voluminous briefs were filed by both parties. Final arguments were heard after the filing of reply briefs.

The Tichnor patent consists essentially of a single sheet of paper material divided into individual picture postcard panels arranged in a single plane and extending in a row with the panels separated by tear lines and an advertising panel at the top of the strip with a hole in it for hanging the uniplaner sheet so that all the picture postcards are visible and substantially all are in a correct viewing position when displayed on a rack. The specific limitations of the invention are defined in the claims, and claim 5 may be considered exemplary as one of the narrower claims:

"5. A multiple function postcard device for efficient display and vending of postcards, said device consisting essentially of a single sheet of paper

material, said sheet comprising a plurality of individual postcard panels arranged substantially in a single plane and extending in a flat row,

each of said postcard panels having a length of about 4½ to 8 inches and a width of about 3 to 4½ inches and carrying a graphic illustration on a front side of said sheet and printed material on a backside of said sheet, an advertising panel removably attached to one end of said row and carrying indicia on said front side of said sheet,

a plurality of perforated tear lines formed in said sheet separating each one of said panels from another whereby said postcard panels can be easily separated from said sheet by a user to form individual postcards,

said tear lines being arranged substantially parallel to each other,

and means comprising an aperture on said advertising panel uppermost and said postcard panels extending downwardly therefrom in said row and having substantially all of the graphic illustrations presented to the eye in their correct viewing position when the row is so arranged."

Plaintiff has been engaged in the manufacture and sale of postcards and postcard devices for many years and since 1965 has marketed the product described and claimed in the Tichnor patent under the trademark Scenicard, each containing six detachable picture postcards. Plaintiff's Scenicard has met with substantial commercial success, approximately 7,300,000 Scenicards having been sold through 1968. However, this is a relatively small number of cards when compared to sales of individual postcards.

It was stipulated by the parties that the type of product exemplified by the Scenicard has sales of less than 10% of postcard sales in the United States when calculated on a basis of individual postcards and a Scenicard as comprising six postcards.[1]

The proceedings before the Patent Office are described in detail in the opinions of the Court of Appeals, *supra*, and of the District Court, D.C.Mass., 1967, 272 F.Supp. 280, and will not be restated in this opinion. Briefly, the examiner refused a patent until the claims were amended to specify that the cards would be arranged in a single plane, i. e., flat or unfolded when sold and that "substantially all of the graphic illustrations [would be] presented to the eye in their correct viewing positions. * * *"

### Findings of Fact

1. Turning to the various basic factual inquiries required by 35 U.S.C. § 103, Graham v. John Deere Co., 1966, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, the most pertinent prior art was not considered by the examiner nor called to the attention of either of the courts which have previously considered the validity of the patent at issue.[2] In 1961 a leading postcard manufacturer not a party to this litigation made and sold in the United States strips of picture postcards having all of the structural features of plaintiff's Scenicard except the hole for hanging. In particular, the strips of cards were delivered by the manufacturer and displayed by the user in a flat or unfolded condition and the pictures were all oriented so as to be viewed if the strip were held vertically from the top. Except for the missing hole the only difference between this

---

1. Plaintiff's Scenicards and the alleged infringing products manufactured by defendant have six cards joined together, but there is nothing essential about this number. The claims speak of "a plur-

ality" and therefore the number may be two or more.

2. This was conceded by plaintiff in its post-trial brief.

prior art and plaintiff's product is that it was made and used for advertising rugs and tapestries by a dealer in products and works of art made in Poland.

2. Also more than a year before plaintiff's application the defendant marketed an unfolded set of three picture postcards which could be separated from each other, also showing scenes meant to be viewed while the set of cards was held vertically. This product differs from plaintiff's patent in that it has no hole for hanging and no header panel or card for advertising the set of cards or identifying the scenes portrayed. The detachable header portion of plaintiff's Scenicards states "6 Detachable Postcards 25¢" and identifies generally the subject of the cards, e. g., "Historic Boston", "Dynamic Denver" and "Midtown Manhattan." Such header cards or portions were commonly used in the prior art in connection with folded strips of picture postcards called packets or albums.

3. The hole for hanging was commonly used in the header portion of strips of color slides manufactured and distributed by leading manufacturers of picture postcards and postcard packets, albums and strips and sold by the same retailers. Ordinarily the views available on color slides may be obtained on picture postcards produced by the same manufacturer.

4. In endeavoring to ascertain the differences between the prior art and the claims at issue, the court received evidence as to the meaning of the phrase "having substantially all the graphic illustrations presented to the eye in their correct viewing positions when the row is so arranged." [3] At least one of the plaintiff's Scenicards, that showing six scenes of "Historic Boston", contains only two cards meant to be viewed while the strip is displayed or held vertically; the other four views are arranged for viewing while the strip is held horizontally. At the trial Tichnor, who is president of the plaintiff company, testified that "correct viewing positions" may be anything except upside down when the strip is hung from a rack. He also defined the phrase as encompassing any arrangement which is acceptable to customers. In its post-trial brief plaintiff contends that the phrase means "that the pictures are arranged for ease in viewing and for comprehensive understanding of the strip when viewed in its correct hanging position * * *."

5. The level of ordinary skill in the art may be resolved from the standpoint of the manufacturer and the merchandiser. Scenicards and similar strips of postcards are manufactured flat as part of large press sheets containing other colored paper products of the manufacturer, such as book covers and Christmas cards. The various items on the large press sheet are separated from each other by so-called guillotine cutting. Even albums and postcard strips which are folded together in accordion fashion are and have been for many years manufactured in a flat or unfolded condition.

6. The typical retailer of plaintiff's product is the gift shop or resort drug store catering to the tourist industry. Individual postcards and groups packaged in binders and envelopes are generally displayed on free-standing racks or racks affixed to a wall or on devices standing on the counter. No special skill is required to display and sell such items.

7. The statement in the opening paragraph of the patent that "this invention greatly reduces cost of production and vending of postcards * * *" was not borne out by the evidence. At the hearing on the motion for summary judg-

---

3. This evidence was also received on the issue raised in an amendment to defendant's answer whether this part of the claims is so indefinite as not to comply with the last paragraph of 35 U.S.C.

§ 112. In permitting this amendment the court construed footnote 4 of the opinion of the Court of Appeals as not to foreclose the issue at a trial on the merits.

ment plaintiff offered affidavits in virtually identical form, presumably prepared by plaintiff, of 37 distributors praising the Scenicard. None of the affiants appeared as a witness at the trial. Some were deposed. Generally speaking, the depositions were considerably less favorable to plaintiff than the group of affidavits.

8. While commercially successful when compared to other methods of selling picture postcards in groups, plaintiff's Scenicards have had no measurable impact upon the basic business of manufacturing and selling individual picture postcards. In the parlance of the trade Scenicards are "plus business", that is, a new product enabling distributors of postcards and similar products to expand their line of merchandise.

*Conclusions of Law*

The Tichnor patent is no more than a combination of old mechanical elements which in no way exceeds the sum of its parts. The old elements disclosed in the prior art perform the same functions in the Tichnor patent that they previously performed and without any unusual or surprising consequences. See Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162.

Confronted by the prior art not considered by the patent office examiner and the low level of skill in the pertinent art, plaintiff has emphasized secondary considerations and has relied upon various subtests of non-obviousness. Taken together they add scant support to plaintiff's claim, far too little to support a finding of invention. Basically Tichnor had a good idea for facilitating and

increasing the sale of picture postcards by displaying them in attractive strips hung vertically and suitably identified, but no exercise of the inventive faculty was required to devise the means for carrying out the idea. Cf. Loew's Drive-in Theaters, Inc. v. Park-in Theaters, Inc., 1 Cir., 1949, 174 F.2d 547, 551–552.

The differences between the subject matter sought to be patented by Tichnor and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the pertinent art. Therefore, the patent is invalid by reason of 35 U.S.C. § 103.

Furthermore, in the context of the patent at issue and in the light of the evidence at the trial, the key phrase of the patent claims, "having substantially all the graphic illustrations presented to the eye in their correct viewing positions * * *", is indefinite and violative of the last paragraph of 35 U.S.C. § 112 and the patent is also invalid on that ground. Indeed, the interpretation of the term "correct viewing positions" offered by the plaintiff at the trial is inconsistent with the position maintained by Tichnor before the patent office. See Straussler v. United States, 1961, 290 F.2d 827, 830, 154 Ct.Cl. 275; General Electric Co. v. Wabash Corp., 1938, 304 U.S. 364, 369, 58 S.Ct. 899, 82 L.Ed. 1402.[4]

Accordingly, the court declares that Tichnor patent No. 3,259,304 is invalid and orders that plaintiff's complaint be dismissed. It is further ordered as requested in defendant's counterclaim that plaintiff be permanently enjoined from asserting said patent against the defendant and its customers.

4. Nevertheless, this is not an exceptional case such as to warrant an award of attorney's fees to defendant pursuant to 35 U.S.C. § 285.