Per Curiam :
This case was referred to Donald E. Lane, a trial commissioner of this court who, under the order of reference, submitted his findings of fact and recommended conclusion of law in a report filed on November 8,1963. Exceptions to the commissioner’s report and requests for special findings of fact were filed by plaintiff, briefs were filed by the parties and the case was submitted to the court on oral argument of counsel. Since the court is in agreement with the opinion and recommendation of the commissioner, it hereby adopts the same as the basis for its judgment in this case as hereinafter set forth. Therefore, claims 1 and 2 of United States Letters Patent No. 2,398,057 are invalid, judgment is entered to this effect and plaintiff’s petition is dismissed. -
OPINION OE COMMISSIONER
This is a claim for reasonable and entire compensation under 28 U.S.C. § 1498, for the unauthorized use and manufacture by or for the United States of a patented invention. The subject matter concerns a propulsion device for amphibious vehicles disclosed in United States Letters Patent 2,398,057, granted to Nicholas Straussler on April 9, 1946. The plaintiff is a citizen of Great Britain and is the sole owner of the patent in suit.
The patent disclosure and the patent claims in suit are described in detail in the accompanying findings of fact. The *854 several issues of law involved are discussed in the following comments.
The propulsion device of the patent in suit was developed by the plaintiff during World War II as part of a program to make military vehicles, such as tanks, amphibious. The suit is based on a claim of infringement of claims 1 and 2 of the plaintiff’s patent by the propulsion mechanism of the T46E-1 Amphibious Cargo Carrier, procured by the defendant during the 6-year period preceding the filing of plaintiff’s petition. In defense of the charge of infringement, the defendant alleges that the patent is invalid and that the accused vehicle does not infringe the claims of the patent.
In support of its defense of invalidity, the defendant has cited a number of patents including Cook patent No. 1,634,982. The Cook patent, which is discussed in detail in finding 13, discloses an amphibious vehicle construction which ■anticipates claim 1 of the patent in suit. The plaintiff has contended, both in the present case and before the Patent Office during the prosecution of his patent application, that the Cook patent is unintelligible as to the details of the propeller mounting. The facts show, however, that a careful reading of the Cook patent specifications reveals sufficient details of the propeller mounting to clearly anticipate claim 1. The test for determining if a reference anticipates a claim of a patent is whether the reference contains within its four corners adequate directions for the practice of the patent claim invalidated. See Dewey & Almy Chemical Co. v. Mimex Co. Inc., 124 F. 2d. 986 (2d Cir. 1942), 52 USPQ138. Stated another way, the reference must disclose all the elements of the claimed combination, or their mechanical equivalents, functioning in substantially the same way to produce substantially the same result. See Williams Iron Works Co. v. Hughes Tool Co., 109 F. 2d 500 (10th Cir. 1940). The prior Cook patent meets these requirements and invalidates claim 1 of the patent in suit. The fact that the United States Patent Office cited the Cook patent during the prosecution of the Straussler patent application creates a presumption of validity over that reference. However, this presumption is rebutted where it is clear that the cited ref *855 erence is a complete anticipation of the patent and that the alleged distinctions, urged upon the Patent Office by the applicant, were not yalid distinctions. See Richmond Screw Anchor Co., Inc. v. Superior Concrete Accessories, Inc., 256 F. 2d 232 (2d Cir. 1958), 117 USPQ 378; Robinson v. DiGaetano, 212 F. 2d 1 (5th Cir. 1954), 101 USPQ 161, and J. R. Clark Co. v. Murray Metal Products Co., Inc., 219 F. 2d 313 (5th Cir. 1955), 104 USPQ 224.
In addition to the prior Cook patent, seven other patents, noted in finding 12 and including the British patent to Straussler No. 542,947, are found to anticipate claim 1 of the patent in suit. Six patents, including the Straussler British patent, are found in finding 20 to anticipate claim 2 of the patent in suit. Plaintiff has challenged the effective date of the British Straussler patent, saying that the “Complete Specification Accepted” date of February 3,1942, which appears on the face of the British patent, is not proof that the patent was in fact published on that date. The copy of the Straussler patent, which was received in evidence, bears the U.S. Patent Office Library stamp with the date of April 22, 1942. This latter date is more than 1 year prior to the filing date, May 19, 1943, of the patent in suit, upon which plaintiff relies. In Great Britain, the accfepted patent is published within a few weeks from the date of acceptance of the complete specification, which acceptance date is printed on the face of the patent. See 'Walker on Patents, Deller’s Edition, Yol. 2, § 175, page 840. In view of the U.S. Patent Office Library stamp which corroborates the publication and availability of the British Straussler patent more than 1 year prior to the earliest date upon which the plaintiff relies, the British Straussler patent is a proper anticipatory reference.
Another issue presented in this case is the breadth or scope to be accorded patent claims 1 and 2 if they should be found to be valid. Specifically, claims 1 and 2 require that the driving clutch member be mounted in the vehicle body and that the casing carrying the propeller shaft be mounted to swing about a horizontal axis on the vehicle body. In the accused vehicle the driving clutch member is not mounted in the vehicle body and the horizontal axis is not on the vehicle body. The plaintiff alleges that these differences are minor *856 and merely a matter of semantics. In addition to the fact that the evidence shows these differences significantly affect the operation of the device, it is noted that the patent in suit, which is not for a pioneer type invention, is located in a crowded art and that the plaintiff found it necessary to rely heavily on certain limitations recited in the claims in order to obtain the patent. In such a situation, patent claims must be narrowly construed, and the limitations and restrictions must be considered as necessary and material. Connecticut Paper Products, Inc. v. New York Paper Co., 127 F. 2d 423 (4th Cir. 1942); 53 USPQ 271; Simmons Co. v. A. Brandwein & Co., 250 F. 2d 440 (7th Cir. 1957), 115 USPQ 307. In the event that patent claims 1 and 2 are found to be valid, these patent claims are not infringed by the propulsion mechanism of defendant’s T46E-1 Amphibious Cargo Carrier.
Summarizing, it is found that claims 1 and 2 of plaintiff’s patent 2,398,057 are invalid over prior disclosures, and that, if valid, these patent claims have not been infringed by defendant’s T46E-1 amphibious cargo carrier.
It is recommended that plaintiff’s petition be dismissed.
BINDINGS OP PACT
1. This is a patent suit arising under the provisions of 28 U.S.C. § 1498 for reasonable and entire compensation for unlicensed use of an invention described and claimed in United States Letters Patent No. 2,398,057 entitled “Propulsion Device For Amphibious Vehicles,” issued April 9,1946, to Nicholas Straussler on an application filed May 19, 1943. This patent will be referred to hereinafter as the patent in suit. The plaintiff, Nicholas Straussler, is a citizen of Great Britain, a resident of London, and sole owner of the patent in suit.
2. The defendant filed a motion for summary judgment which was denied on June 7, 1961, in an opinion by Chief Judge Jones reported in 154 Ct. Cl. 275, 290 F. 2d 827.
3. Counsel for the parties agreed, at pretrial, that the issues of infringement and validity of the Straussler patent be first determined on full proofs, findings of fact, and argument of counsel, and that the accounting issue, if any, be deferred until after the entry of an order of the court on the liability issue.
*857 4. Plaintiff is a graduate engineer, engaged in practice as a consulting engineer, and is an expert in the design of military vehicles. Since 1914 plaintiff has been a consultant of the Woolwich Arsenal, an establishment of the British War Office, and has been closely associated with the development of vehicles for the British military services for 40 years. He has designed military vehicles for many different governments and is the holder of a relatively large number of patents, including a number of United States patents.
5. The patent in suit states that the patentee filed an application for a patent on the same invention in Great Britain on March 10,1942. A copy of the British patent, which issued in 1946, was not offered in evidence by either party. The application in the United States was not filed within 1 year after the British filing date, and plaintiff has relied only on the United States filing date, May 19, 1943, as the earliest date at which the invention may have legal effect in the United States. The application file in the United States Patent Office contains no evidence that plaintiff ever sought for the patent in suit an extension of priority rights under the provisions of the Boykin Act, Public Law 690, 79th Congress, 2d Sess., approved August 8, 1946, by a request in writing after passage of the Act.
6. During World War II, plaintiff undertook to make amphibious a tank weighing nearly 30 tons, which later became known as the Sherman tank. In order to modify this tank to travel through the open water and onto beaches, plaintiff was confronted with devising a marine drive which would propel and control a heavy deep-floating land vehicle in the water under the power of its own engine and which would not interfere with the operation of the vehicle on land. Initial experimentation on flotation and propulsion equipment was on a 10-ton tank known as the Tetrach on which the steei’ing and propulsion in the water were accomplished by a form of outboard drive. This Tetrach propulsion and steering device was the subject of plaintiff’s British patent 542,947. After plaintiff’s initial experiments with the Tet-rach tank he continued his experiments on the British Valentine tank because drawings of the Sherman tank were not available. The Valentine tank weighed from 18 to 20 tons, *858 and was powered by a single engine. It was for the Valentine tank that plaintiff developed the propulsion device disclosed in the patent in suit. The tests of the Valentine tank with the plaintiff’s propulsion device were successful, and were attended by a number of high-ranking officers, including General Eisenhower, then the Supreme Commander of the Allied Expeditionary Force. During World War II the construction disclosed in the patent in suit was called “DD” to designate the duplex drive, and in conversation was also referred to as “Donald Duck.” Following the successful tests on the Valentine tanks, one thousand of these constructions were ordered from the plaintiff in 1943.
7. Briefly, the plaintiff’s propulsion device involves the use of a power-driven propeller connected to the main body of the vehicle by a horizontal pivot joint which permits raising the propeller out of its operating position when not in use and by a vertical pivot joint which permits steering the propeller and hence, the vehicle. Plaintiff, in adapting propulsion devices to different vehicles, varied the relative position of these horizontal and vertical pivot axes. In the first design on the Valentine tank, the connection for pivotal movement about the vertical axis to provide for steering by the propeller was placed aft or to the rear of the mechanism for pivotal movement about a horizontal axis for raising the propeller and disconnecting the propeller section of the shaft. In adapting the propulsion device for use on the Sherman tank, the horizontal pivot axis was placed rearward of the vertical pivot axis. This was the reverse of the arrangement of these pivots as used in the installation of the Valentine tank. With regard to the arrangement of pivots, the illustrations of the patent in suit show the Valentine type arrangement.
8. The patent in suit discloses a propulsion mechanism for propelling and steering an amphibious vehicle in the water, with provision for disconnecting the drive mechanism and raising the propeller to a protected position for operation on land. Essentially, the mechanism disclosed is comprised of a drive shaft, a driving clutch member, a driven clutch member, a forward propeller shaft section, a universal joint, a rearward propeller shaft section, and a propeller. The drive *859 shaft and the propeller shaft are linked together by a hinge directly over the two clutch members in such a manner that the propeller shaft and the attached propeller may be raised and lowered. Eaising the propeller shaft disengages the two clutch members and terminates the transmission of power from the drive shaft through the clutch and propeller shaft to the propeller. A universal joint connecting the two sections of the propeller shaft allows the rearward propeller shaft section and the propeller to be swung laterally to effectively steer the vehicle in the water.
9. The patent in suit contains 6 figures, of which figs. 1 and 2 are reproduced herein. Fig. 1 is a side elevation of the rear portion of an amphibious vehicle having the propulsion device mounted thereon and showing the device in the raised position in dotted lines. Fig. 2 is a side elevation, partially in section, of the propulsion device on an enlarged scale. The Straussler patent specification describes the construction in part as follows:
3n carrying out the invention according to one mode, a is the body of the vehicle and b the driving sprocket of one of the endless tracks. The rear axle gear casing is shown at c the axle being driven from the motor by a bevel pinion d meshing with a bevel wheel e fixed to the axle.
For the purpose of propelling the vehicle when afloat an additional bevel pinion / is provided which also meshes with the bevel wheel e and is splined or otherwise fixed for rotation to the forward end of a shaft g mounted for rotation in bearings in a tubular projection g1 from the rear section of the gear casing o. The rear end of the shaft g constitutes the female element of a dog coupling h the male element of which has splined connection with the inner end of a propeller shaft i which is mounted for rotation in the forward section of a casing j hereinafter more fully described. The forward section of the casing j has welded on its exterior a tubular member k carrying a pair of laterally projecting support pins l serving for suspension of the propeller shaft and its appurtenant parts, by means of a pair of links m fixed at their lower ends on the support pins l and pivoted at their upper ends on pivot pins or trunnions n fixed to the back of the vehicle. The forward end of the tubular member k has welded thereto an annular plate o having an inset annular sealing ring p which *860 when the parts are in tbe positions shown in full lines in the figures engages the rear edge of the tubular projection g1. Thus the latter and the ring plate o serve as abutments which limit downward swinging of the parts about the trunnions n.

The propeller shaft comprises forward and rear sections ii1 connected by a universal shaft coupling q preferably of the constant angular velocity type, and the rear section i1 extends into a horizontal tubular projection r from the rear section of the casing j. The rear section i1 is splined to a sleeve s which is mounted for rotation in a bushing or bearings secured within the tubular projection r. The outer end of the sleeve s has secured thereto *861 the propeller t and any suitable means may be provided to prevent ingress of water into the casing j.
The rear section of the casing j carries at its forward end, and fixed thereto, a pair of trunnions u having their axes vertical or substantially in alignment. The trunnions u are rotatably mounted in bearings in the forward section of the casing j and thus the rear section thereof together with the rear section i1 of the propeller shaft and the propeller can be turned about a vertical axis for steering the vehicle, the universal coupling q permitting such movement without interfering with the drive, it being understood that the axis of turning movement extends through the centre of the universal coupling.
validitt
10. Claims 1 and 2 of the patent in suit are set forth below in clauses to facilitate the discussion and understanding of the claims.

Patent Claim 1

In an amphibious motor driven vehicle, a vehicle body,
a driving clutch member mounted in said body,
a propeller shaft,
a carried said
a casing rotatably receiving said shaft,
a and means mounting said casing to swing about a horizontal axis on said body
whereby the clutch member may be swung into engagement with the driving clutch member with the propeller occupying an operative position and out of engagement with the driving clutch member with the propeller assuming an elevated inoperative position.

Patent Claim £

An amphibious vehicle as claimed in claim 1 wherein said propeller shaft is composed of two sections coupled by a universal joint,
the casing including front and rear sections,
the front casing section being connected with the mounting means and
the rear section being movable about a vertical axis passing through said universal joint.
*862 11. The defendant contends that the patent in suit is invalid on the ground that the claimed invention is anticipated by the prior art. In support of this contention, the defendant has called attention to a large number of patents as representing the state of the art at the time when the application for the patent in suit was filed, and nine patents (two of which were also cited as state of the art) as anticipating the claims of the patent in suit. The state of the art patents show that the marine propulsion art is a crowded art in which there are a relatively large number of patents relating to various means for lifting propellers out of their operating positions and/or various means, including many types of universal joints, for moving the propeller laterally to steer the vehicle to which it is attached. More specifically, clevis and other types of universal couplings in in line power shafts for propelling and steering water vessels, are disclosed in the following prior patents:
1864
Ressel_ 1864
et al-18/3
172,367 1876
_ 189,603 1877
et al. 1912
Ranke _ 1932
Davis_ 1943

{filed Oct. 6,194-1)

It is noted that the Davis patent was issued after the filing date of the patent in suit; however, the Davis patent application was filed prior to the earliest date of invention on which the plaintiff relies. The prior patents to—
Williams_ 887,562 1908
Proksa_ 1,007,486 1911
disclose the use of universal couplings in in line power shafts for automobiles and airplanes respectively. Gear-type universal joints in in line power shafts for driving and steering a vehicle wheel or the like are shown in the following prior patents:
Smith_ 66,052 1867
Berends-,- 990,798 1911
Freeman_ 1,145,762 1915
Clifton_ 1,861,594 1932
*863 Gear-type joints connected to offset power shafts for driving and steering vehicles or other mechanisms are shown in the following prior patents:
Sparr_ 136,464 1873
Stone_ 509,404 1893
Dahl_ 543,083 1895
Seeger, et al_ 667,465 1901
Searle_ 678,286 1901
Schmit_ 1,129,021 1915
Barreré_ 618,319 (French) 1927
Parsons-,_ 1,801,781 1931
Straussler_ 542,947 (British) 1942
The prior art also includes a number of patents disclosing propulsion means for vessels which include a propeller shaft construction which permits the tilting or lifting of the distal or propeller end of the shaft about a horizontal axis to raise the propeller out of the water or over objects in the water. In some instances, during the lifting of the end portion of the propeller shaft, there are no interruptions to power transmission and in other instances there is a separation of driving and driven clutch members as a result of the lifting. State of the art patents which disclose the first type are:
Allyn_ 172,367 1876
Carpenter_ 189,603 1877
Sadler_ 232,651 1880
Desenberg, et al. 1,028,333 1912
Parsons_ 1,801,781 1931
Louvier_ 1,823,109 1931
Banlce_ 1932
Svendsen_ 1937
Davis_ 2,321,133 1943

(filed Oct. 6,194-1)

State of the art patents which disclose the second type of vessel propellers which are liftable about a horizontal axis, with a resultant separation of driving and driven clutch members, are as follows:
Ericsson- 3,869 1844
Neumann - 1,802,351 1931
Dorsey_ 1,899,319 1933
Linthwaite_ 1, 990,387 1935
Dorr_ 2,261,434 1941
Zealand- 10,320 (British) 1885
Straussler- 542,947 (British) 1942
*864 The use of a casing, which receives a driven propeller shaft, consisting of two sections coupled together in such a manner that one may pivot on a vertical axis, is disclosed in the following state of the art patents:
Eessel _ 44,696 1864
Stone_ 509,404 1893
Seeger, et al_ 667,465 1901
Williams_ 887,562 1908
Freeman_ 1,145,762 1915
Parsons_ 1,801,791 1931
Clifton _ 1,861,594 1932
Ranke_ 1,863,940 1932
Dorsey_ 1,899,319 1933
Straussler_ 542,947 (British) 1942
12. Defendant contends that claim 1 of the patent in suit is anticipated by the following patents:
Cook_ 1,634,932 1927
Griffith_ 1,780,075 1930
Fahrney_ 1, 890,938 1932
Dorsey_ 1,899,319 1933
Hedges_ 2,114, 633 1938
Caroland_ 2,146, 623 1939
Porsche_ 220,397 (Swiss) 1942
Straussler_ 542,947 (British) 1942
Each of these patents has an effective date prior to May 19, 1943, the earliest date that may be accorded the patent in suit. Plaintiff has challenged the effective date of the Straussler British patent, saying that the “Complete Specification Accepted” date of February 3, 1942, printed on the face of the British patent, is not proof that the patent was in fact published on that date. British patents are generally published within two or three weeks after the accepted date which would place the publication date well prior to the May 19, 1943 filing date of the patent in suit. That the British patent was in fact published prior to the filing date of the patent in suit is indicated by the United States Patent Office Library stamp, bearing the date of April 22,1942, which appears on copies of the British patent received in evidence in this case.
13. The 1927 Cook patent, figs. 2 and 3 of which are reproduced herein, relates to an amphibious vehicle having

*865

pivotable pontoon members carrying the wheels of the vehicle, and discloses a pivoted stern member which carries the propeller mechanism for driving the vehicle when used as a water craft. One of the objects of the Cook invention is stated as follows:
Still another object of this invention is the construction of a land and water vehicle wherein the main body has the rear portion thereof constructed to receive a propeller unit within a pocket, said propeller unit adapted to be swung outwardly and downwardly into a position to increase the length of the vehicle body and at the same time position the propeller mechanisms to receive a drive from the driving mechanism of the vehicle.
Fig. 2 is a longitudinal section of the vehicle, with parts in elevation, showing the propeller mechanism in the operating position. Eeferring to the Cook patent drawings, a driving clutch member is carried in the vehicle body 1 in a hemispherical housing indicated by the numeral 27. A propeller shaft *866 33 provided with a propeller 34 is mounted for rotation in a body section 32. The propeller shaft 33 has a driven clutch member at its forward end in the hemispherical housing 35 for engagement with the driving clutch member. The section 32 is supported from a transverse shaft provided with a gear 30, the latter being operated by a power-driven worm 29 to raise the section 32 from the position illustrated in fig. 2 upward to a position in the recess 31 within the vehicle body. The driven clutch member may be swung into engagement with the driving clutch member with the propeller 34 occupying an operative position as is shown in fig. 2, or the driven clutch member may be swung out of engagement with the driving clutch member, with the propeller 34 assuming an elevated, inoperative position.
14. The Cook patent was cited by the patent examiner during the prosecution of the application for the patent in suit. Patent counsel for Straussler argued that the disclosures in the Cook patent of the details of the propeller mounting are unintelligible, pointing out that the Cook specification states that the propeller section 32 may be swung into the body but shows no structure by which this may be done. The plaintiff has also contended in the present suit that the Cook patent construction has no casing receiving the propeller shaft, but only shows an extension by which the shaft is supported and that this results in uncertainty of function and operation. A careful review of the Cook patent specification and drawing shows that while the drawings do not show in detail the connection between the rear section 32 and the propeller shaft 33, such a connection is described in the patent specification as follows:
The rear extension section 32 carries a propeller shaft 33 on which a propeller blade 34 is supported.
This explanation makes it clear that the Cook propeller shaft is carried by the pivoted housing 32 and would be raised when the housing is raised. In view of this description, means for making the connection would be readily apparent to one having ordinary skill in the art. The Cook patent drawings illustrate in fig. 2 a vertical strut extending downward from section 32 to support a propeller shaft bearing aft *867 of the rudder 36 and forward of the propeller 34. The rear bousing of the Cook patent is the structural equivalent of the casing recited in claim. 1 of the patent in suit. Each of the several elements recited in claim 1 of the patent in suit is found to be clearly disclosed in the prior Cook patent.

15. The Hedges patent is representative of the other patents urged by the defendant against claim 1. This patent relates to propeller drives and steering mechanisms for motor boats having the motor located inboard and the propeller and steering mechanism located outboard. Fig. 1 of the Hedges patent reproduced herein is a longitudinal sectional view of a motor boat drive and steering mechanism in the operating position with an inoperative position being indicated in dotted lines. Referring to fig. 1, the boat body 1 has a driving clutch member 27 mounted therein. A 2-section propeller shaft 7 and 24, joined by a universal joint type bevel gear *868 arrangement 15,16, 18, 22, and 23, is rotatably received in a casing 8 and 11 and carries a propeller 6. A driven clutch member 28 is also carried by the 2-section propeller shaft. The casing 11 and 8 is mounted by transverse hinges 12 and 5a to swing about a horizontal axis on the boat 1 whereby the driven clutch member 28 may be swung into engagement with the driving clutch member 27 with the propeller 6 in an operative position, and may be swung out of engagement with the driving clutch member with the propeller assuming an elevated inoperative position as indicated by dotted lines. The Hedges patent specification states that the purpose of pivotally mounting the driving and steering mechanism is to prevent damage thereto should the mechanism strike a rock or the like. The Swiss Porsche patent and the British Straussler patent also disclose amphibious motor vehicles. The plaintiff contends that Hedges type constructions are not pertinent since they do not show a driven clutch member and propeller carried by the same shaft, but show shafts carrying these elements spaced vertically from each other. This position is not supported by the evidence. ^Referring to fig. 2 of the Straussler patent in suit, reproduced above, the driven clutch member and the propeller are carried on separate shafts i and i1. The fact that the two shafts of the prior patents are spaced vertically from one another does not make them irrelevant since there is nothing in patent claims 1 and 2 or in the disclosure of the Straussler patent which would exclude such an arrangement. It is found that the Cook and the Hedges patents each contains all of the elements of claim 1 of the patent in suit.
16. Defendant contends that claim 2 of the patent in suit is anticipated by the following prior patents:
Griffith_ 1,780,075 1930
Jacques_ 1,845,712 1932
Dorsey_ 1,899,319 1933
Hedges_ 2,114,633 1938
Caroland_ 2,146,623 1939
Straussler_ 542,947 (British) 1942
Each of these patents has an effective date prior to May 19, 1943, the earliest date that may be accorded the patent in suit.
*869 17. Claim 2 is dependent on claim 1 and contains the specific limitations that the propeller shaft is composed of two sections coupled by a universal joint and that the casing has a front and rear section with the front section being connected to the mounting means and the rear section being movable about a vertical axis passing through the universal joint. The claim 2 recital of a universal joint in the propeller shaft and vertical pivot axis in the casing recited in claim 1 results in a propulsion device in which the propeller may be used for steering the vehicle when afloat.
18. The Hedges patent appears to be representative of the prior patents urged by defendant. Referring to fig. 1 reproduced above in finding 15, the Hedges propeller shaft is composed of two sections 7 and 24. These two sections are connected by bevel gears 15 and 16, shaft 18, and bevel gears 22 and 23. The casing includes an upper section 11 and a lower section 8. The upper section 11 is connected to the mounting hinges 12 and 5a. The lower section 8 has a shank 8a terminating in a ring gear 30. Shank 8a is rotata-bly fitted within bearing 10 which is formed as an integral part of upper section 11. When ring gear 30 is turned by gears connecting it to a steering cable, lower section 8 is rotated on a vertical coaxial shaft 18.
19. The plaintiff contends that claim 2 is distinguishable over the cited patents in that the latter do not disclose a universal joint and they do not show a casing having front and rear sections. Webster’s New International Dictionary (2d Ed. 1939) at page 2782, defines universal joint as follows:
Any of various joints or couplings permitting swiveling or turning at any angle within denned limits, as in the ball-and-socket joint.
20. The Smith, Stone, Seeger, and Dahl patents noted in finding 11 above, disclose bevel gear joints similar to the joint disclosed in the Hedges patent, and in each of these patents the joint is referred to as a wniversal. Nothing in the claims or disclosure of the patent in suit limits the term universal joint to the exact form illustrated in the patent. It is found that bevel gears 15 and 16, shaft 18, and gears 22 and 23 of the Hedges patent constitute a universal joint *870 within the meaning of that term as used in claim 2. The Jacques patent discloses a multiple belt drive connection between the two shafts, and these belts permit the shafts to swivel relative to one another while transmitting rotary motion therethrough. Such belts are the equivalent of a universal joint. The fact that the two casings of the prior patents are positioned one above the other rather than one forward of the other is immaterial. In both the patent in suit and the cited prior patents the casings perform the same function in the same manner. In each of the patents urged against claim 2 a portion of the lower casing is to the rear of the upper casing. In the British Straussler patent the rear or lower casing is connected to the horizontal pivot rather than the front or upper casing as recited in claim 2. This difference is immaterial and it would be within the skill of an ordinary mechanic in this field to pivotally connect the front casing of the British Straussler construction to the body of the vehicle rather than the rear casing, particularly in view of the fact that each of the other prior patents noted shows the front or upper casing connected to the horizontal pivot. It is found that the Griffith, Jacques, Hedges, Caroland, Dorsey, and British Straussler patents each contains all of the elements of claim 2 of the patent in suit.
21. Summarizing findings 10 through 20 above, it is found that claims 1 and 2 of the patent in suit are anticipated by the disclosures of prior patents and are invalid.
INFRINGEMENT
22. The plaintiff contends that the T46E-1 Amphibious Cargo Carrier (also designated later as M76), procured by the defendant during the 6-year period preceding the filing of this suit from the General Motors Corporation under Contract DA-20-018-OBD-12205 of February 15,1952, includes a propulsion device which is an infringement of one or both of the claims of the patent in suit. The parties agreed that the aforesaid propulsion device was built in accordance with Ordnance Department drawing No. K7975S43 entitled “Installation Marine Drive and Steering” which formed a part *871 of the aforesaid contract. It was further agreed that the elements of the alleged infringing propulsion assembly extracted from Ordnance Department drawing No. K7975343 are correctly illustrated in figs. 4 and 5 of defendant’s exhibit 3, portions of which are reproduced herein.

23. In the accused propulsion unit, a two-section drive shaft extends aft from the end of the vehicle body and terminates in a driving clutch member. The two sections of the drive shaft are joined by a universal joint. The drive shaft is mounted in two casings. The first casing is rigidly *872 mounted on the body of the vehicle and extends to tbe universal joint. The second casing is pivotally connected to the first casing on a substantially vertical axis at the universal joint and extends to the driving clutch member. A driven clutch member, mounted on a propeller shaft, may be moved into engagement with the driving clutch member. The driven clutch member and the propeller' shaft are mounted in a third casing which is hinged to the second casing at a point directly above the two clutch members. The amphibious vehicle is steered, when used in water, by turning the second casing and hence the rearward section of the drive shaft and the propeller about a vertical axis passing through the universal joint. The propeller may be raised, when not in use, by pivoting the third casing and hence the driven clutch member and the. propeller shaft about a transverse horizontal axis passing through the hinge.
24. Claim 1 of the patent in suit recites that the driving clutch member is mounted m the vehicle body and that the casing carrying the propeller shaft is mounted to swing about a horizontal axis on the vehicle body. The accused construction has its driving clutch member mounted on the aft end of the two-section drive shaft at a point outside of and rearward of the vehicle body. The hinge which provides the horizontal axis for the casing in the accused construction is also located outside of and rearward of the vehicle body.
25. The plaintiff contends that the differences are minor and merely a matter of semantics. The patent in suit is not a pioneer patent. As noted in finding 11 above, the marine propulsion art is a crowded art and a large number of prior patents show amphibious vehicle propulsion devices having means for lifting the propeller out of the way during operation on land. In attempting to rebut defendant’s evidence of invalidity over prior patents, plaintiff relies heavily on certain limitations recited in the claims. The claims of the patent must be strictly construed. The constructional differences noted above affect the operation of the device. When the accused construction device is pivoted for steering, the hinge and the clutch are both moved with the propeller, whereas they are stationary in the Straussler construction. *873 When tbe propeller of tbe accused construction is raised for use on land, tbe universal joint and tbe driven clutcb member remain in tbeir operating positions, whereas they are raised in tlie-Straussler construction. It is found that tbe accused construction does not contain tbe structure recited in claims -1 and 2 of tbe patent in suit. In addition to tbe limitations contained in.claim 1, claim 2 recites that the propeller shaft is composed of two sections and that the casing includes front and rear sections. Claims 1 and 2 are not infringed by the accused vehicle.
26. Summarizing findings 22 through 25 above, the propulsion device of the T46E-1 Amphibious Cargo Carrier is found not to infringe claims 1 or 2 of the patent in suit, if valid.
CONCLUSION OP LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that claims 1 and 2 of United States Letters Patent No. 2,398,057 are invalid, and judgment is entered to that effect, and therefore plaintiff’s petition is dismissed.