The GREENING NURSERY COMPANY, Plaintiff,

v.

J AND R TOOL AND MANUFACTUR-ING COMPANY, Defendant.

Civ. No. 5–1395.

United States District Court
S. D. Iowa,
Central Division.

March 31, 1966.

Wendell B. Gibson, Des Moines, Iowa, for plaintiff.

Rudolph L. Lowell, Des Moines, Iowa, for defendant.

HANSON, District Judge.

This is an action brought by plaintiff, The Greening Nursery Company of Monroe, Michigan, against defendant, J and R Tool and Manufacturing Company of Des Moines, Iowa, for infringement of United States Patent No. 2,847,808 which had its inception by application filed in the United States Patent Office on September 6, 1956, and conclusion by allowance to the plaintiff on August 19, 1958. The machine has been entitled a "Tree Wrapping Machine." Plaintiff charges that the machine sold by the defendant patented September 26, 1961, bearing No. 3,001,345, which was filed on June 17, 1959, called "Bush Packing Machine" infringes the plaintiff's machine and, accordingly, plaintiff prays for an injunction against further infringement of the patent and an accounting for profits and damages.

Only claims 1 [1], 2 [2], 5 [3], 6 [4], and 7 [5] of the plaintiff's patent are in suit.

1. Claim 1 of J. W. Romine U.S. Patent No. 2,847,808.

In a device for packaging a body portion of an element having an extending portion of thinner cross-section in combination,

 (a) A support,
 (b) troughlike means secured to said support,
 (c) cover means for said troughlike means,
 (d) said cover means being movable toward the troughlike means for compacting the body portion of the element,
 (e) said cover means forming a tube with said troughlike means for slidably receiving a package thereover into which the body portion of the element is to be inserted,
 (f) and pusher means comprising a member for engaging and advancing the body portion through the troughlike means into the package as the package is advanced from said troughlike means,
 (g) Said member being disposed adjacent to the wall of the troughlike means and on the opposite side of said extending portion from the cover means when the cover means has been moved into position to form a tube with the troughlike means, whereby the packaged body portion and the extending portion may be released from the device when the cover means is moved away from the troughlike means.

2. Claim 2 of J. W. Romine U.S. Patent No. 2,847,808.

A device for packaging the roots of a plant having an extending portion to be disposed outside of the package including, in combination,

 (a) Troughlike means open at one side,
 (b) closure means for said troughlike means for compacting material around said roots and forming a tunnel over which a bag may be placed,
 (c) pusher means comprising a member disposed adjacent to said troughlike means and on the opposite side of said extending portion from said closure means when said closure means is in tunnel-forming position,
 (d) said member being engageable with the packed material and roots for pushing the packed material and roots from the troughlike means into the bag as the bag is pushed from the forward end of the troughlike and closure means, whereby upon moving said closure means from the troughlike means the extending portion may be lifted therefrom and from the pusher means.

3. Claim 5 of J. W. Romine U.S. Patent No. 2,847,808.

A device for packaging the roots of stock such as trees, shrubs and the like including, in combination,

 (a) A support,
 (b) a troughlike element mounted on said support to receive said roots,
 (c) a cover movably mounted on said support into and from engaged position with said troughlike element to form a generally cylindrical cavity in which

---

4. See note 4 on page 119.

5. See note 5 on page 119.

The defendant has denied that it infringes the plaintiff's patent and has filed a counterclaim by declaratory judgment asking that the court hold the plaintiff's patent known as the 808 patent in suit invalid and/or so limited that defendant does not infringe any of the claims thereof.

Thus it must be clearly seen that the normal problems of patent cases involving infringement and denials of infringement and pleadings by counterclaim of invalidity are before the court.

The record by way of stipulation and pretrial order clearly establishes the jurisdiction of the court over the parties and the cause of action. It is further clear that there is no question of ownership of the patents involved.

It appears without question that the defendant began selling its machines which are here charged to infringe on or about June of 1961. All machines involved herein as they relate to the parties plaintiff and defendant are claimed to be designed so as to rapidly and properly package the roots of bushes, shrubs, or trees in bags. This packaging is said to prevent the roots from drying and dying until they can be properly used by the consumer. In both the machines certain types of packing material such as shingle tow, peat moss, excelsior, and saw dust are used in the bag. It is the intention to keep the roots moist and free from air. The machines are meant to provide a good horticultural package properly packed with roots and packing material.

the roots and packing material may be compacted,

(d) means for maintaining said cover in engaged position so that a container may be placed thereover,

(e) and means on said support for advancing said roots and material from said troughlike element and cover into the container as the container is advanced therefrom,

(f) said cover being thereafter movable from said troughlike element to permit the roots and stock to be removed from the device,

(g) said means for advancing said material and roots comprising a movable element disposed within the troughlike element and on the opposite side of said stock from said cover when said cover is in engaged position.

4. Claim 6 of J. W. Romine U.S. Patent No. 2,847,808.
A device for packaging the roots of a plant having extended branches which includes, in combination,

(a) A supporting frame,

(b) troughlike means having an open side mounted on said frame,

(c) cover means movable into a position for closing said side and compacting material about the plant roots,

(d) a pushing element movable within the troughlike means and disposed on the opposite side of said extending branches from said cover means when said cover means has been moved into said closing position,

(e) and means for advancing said pushing element for moving said roots and

material from said troughlike and cover means into a container placed thereon and advanced therefrom,

(f) said cover means being thereafter movable from the troughlike means to permit the extending branches to be removed laterally from the device along with said container and packaged roots.

5. Claim 7 of J. W. Romine U.S. Patent No. 2,847,808.
A device for packaging the roots of a plant having extending branches which includes, in combination,

(a) a supporting frame,

(b) troughlike means having an open side mounted on said frame,

(c) cover means movable into a position for closing said side and compacting material about the plant roots,

(d) a pushing element movable within the troughlike means,

(e) said pushing element comprising a yoke member of U-shape, the open side of said U-shaped member presenting toward the cover means when the cover means is in closing position,

(f) and means for advancing said pushing element for moving said roots and material from said troughlike and cover means into a container placed thereon and advanced therefrom,

(g) said cover means being thereafter movable from the troughlike means to permit the extending branches to be removed laterally from the device along with said container and packaged roots.

In both of these machines a bag is supported so as to receive the root end of the plant or tree and the packing materials which are pushed from the forming mechanism by a pusher element. It is obvious that both of the parties involved in this cause are in substance using a U-shaped form of pusher. This is said to be necessary to eliminate damage to the plant or tree being packaged.

Insofar as these machines are concerned, the greatest point of dispute centers around the plaintiff calling its package forming devices "troughlike means" and as stated by the defendant himself: "The propriety of the terms 'trough' and 'cover' as applied to defendant's machine is an issue in this suit." It particularly appears to the court that it is perhaps the main issue.

Plaintiff's exhibit 1 dated as of August 19, 1958, describing patent No. 2,-847,808 (showing inventor to be J. W. Romine) in the first and second paragraphs thereof states as follows, to-wit:

"This invention relates to an improved tree bagging apparatus and more particularly to improved apparatus to facilitate the bagging of tree roots together with material to preserve the roots for shipment and storage.

One object of the instant invention is to improve tree root bagging apparatus. Another object is to provide improved apparatus for packing preservative material around the roots of trees and for automatically inserting the roots together with the preservative material into a bag or wrapper. Another object is to provide improved apparatus to support a tree, to compress preservative material around the roots thereof, and to insert the roots together with the preservative material into a wrapper while maintaining the roots and the preservative material in a shaped, lightly compressed mass."

Plaintiff's exhibit 10 dated as of September 26, 1961, describing patent No. 3,-001,345 (showing inventor to be Z. C. Zeller) in the first paragraph thereof states as follows, to-wit:

"This invention is a bush packing machine. It consists generally of a pair of spaced shoes that are more or less semicylindrical in shape which makes it possible, when they are moved close together, to slip a bag or sack over the roots of a bush or shrub, along with the packing material used around the roots in shipping, confined between them. The device also provides structure for modifying the machine to adapt it to a variety of different sized bushes and shrubs. Once the bag or the like to cover the roots of a bush is embracing the outside of the shoes, an ejecting mechanism forces the bush along with the bag surrounding the roots off the shoes. As soon as the bush has been removed from the shoes, the shoes open up again to permit insertion of a fresh bush along with the packing material to go around its roots. A safety structure is included to prevent the shoes from coming together accidentally."

The plaintiff says in this case that the patent claims in suit are supported by the disclosure of his 808 patent and that all of the elements called for in the patent claims hereinbefore set out are present in defendant's accused machine resulting in a direct infringement by the defendant. The defendant, on the other hand, contends that his machine although producing the same end result as the machine of the plaintiff, differs in the means for attaining the result and in the manner in which the elements operate and cooperate to produce the result. He further asks declaratory relief by urging strenuously upon the court that claims 1, 2, 5, 6, and 7 of the 808 patent are completely anticipated and, therefore, invalid in view of the prior art patents and particularly as they relate to what is known as the Gribner and Field patents. By reason of all these contentions, the following exhibits are set forth and are found to be issued pursuant to the dates proclaimed upon the exhibits: A, B, C, D, and E.

EXHIBIT A

**Aug. 19, 1958** J. W. ROMINE **2,847,808**

TREE WRAPPING MACHINE

Filed Sept. 6, 1956 3 Sheets-Sheet 1

INVENTOR.
James W. Romine
BY
Harness, Dickey & Pierce
ATTORNEYS

INVENTOR.

James W. Romine

BY

Barnes, Dieul & Pierce,

ATTORNEYS

Aug. 19, 1958 J. W. ROMINE 2,847,808

TREE WRAPPING MACHINE

Filed Sept. 6, 1956 3 Sheets—Sheet 3

INVENTOR.

James W. Romine

BY

Harness, Dickey & Pierce

ATTORNEYS.

EXHIBIT B

Sept. 26, 1961 Z. C. ZELLER 3,001,345

BUSH PACKING MACHINE

Filed June 17, 1959 3 Sheets-Sheet 1

Fig. 1.

Fig. 2.

Fig. 3.

Witness
Edward P. Seeley

Inventor
Zellis C. Zeller
by Moore, White & Burd
Attorneys

Sept. 26, 1961 Z. C. ZELLER 3,001,345
 BUSH PACKING MACHINE

Filed June 17, 1959 3 Sheets-Sheet 2

Fig.4.

Fig.5.

Fig.6. Fig.9.

Witness
Edward P. Seeley

Inventor
Zellis C. Zeller
by Moore, White & Beard
Attorneys

126

Fig.7.

Fig.8.

Witness
Edward P. Seeley

Inventor
Zellis C. Zeller
by Moore, White & Burd
Attorneys

EXHIBIT C

SEPT. 26. 1961 Z. C. ZELLER 3,001,345

Filed June 17, 1959 BUSH PACKING MACHINE

Feb. 17, 1953

A. D. FIELD

2,628,753

PLANT PACKING MACHINE

Filed Oct. 22, 1949

3 Sheets-Sheet 1

FIG. 1.

INVENTOR
ALAN D. FIELD

BY

ATTORNEYS

A. D. FIELD

PLANT PACKING MACHINE

Filed Oct. 22, 1949

FIG. 2.

FIG. 3.

INVENTOR

ALAN D. FIELD

BY

*Ostrolenk & Faber*

ATTORNEYS

Feb. 17, 1953 A. D. FIELD 2,628,753

PLANT PACKING MACHINE

Filed Oct. 22, 1949 3 Sheets—Sheet 3

FIG. 4.

FIG. 5. FIG. 6.

INVENTOR
ALAN D. FIELD

BY
Ostrolenk+Faber
ATTORNEYS

EXHIBIT E

Jan. 15, 1946. J. GRIBNER 2,393,102

FERN PACKING MACHINE

Filed June 5, 1944 2 Sheets-Sheet 1

FIG. 2

FIG. 1

INVENTOR.
JOHN GRIBNER
ATTORNEY.

Jan. 15, 1946.　　　J. GRIBNER　　　2,393,102

FERN PACKING MACHINE

Filed June 5, 1944　　　2 Sheets-Sheet 2

INVENTOR
JOHN GRIBNER.
BY
ATTORNEY.

In previous paragraphs, the first paragraph of the application for patent filed in the United States Patent Office for the plaintiff's machine and the defendant's machine have been set forth. Insofar as the machines relating to prior art are concerned, the first two paragraphs of Exhibit D are as follows, to-wit:

"My invention relates to a plant packing machine and more particularly to a machine to facilitate the packing of various types of plants in individual containers and lends itself to plant packing with the least amount of time, effort and material.

The present method of plant packing is as follows: The plant to be packed is placed in a piece of paper or material large enough to contain its root and a packing material such as soil, peat, humus or other damp materials is added to the root and root wrapping materials. The root wrapping material is then tied at the top so as to include the root and the packing material. The plant with its roots wrapped is placed in an outer container such as a bag, box or other container and this package is also tied at the top to complete the process of packing."

The first two paragraphs of Exhibit E are as follows:

"This invention relates generally to the florists' art and particularly to a fern packing machine.

The main object of this invention is to provide an apparatus by means of which ferns may be economically packed in bags instead of the usual bales and boxes as is the common practice."

■ The pleadings and the method of proof in this case raise certain problems as to what the court should determine first or whether or not it is essential to determine certain of the contentions. The generally recognized rule that there can be no infringement if the patent is invalid is so generally accepted and so elementary that the citation of authority would seem to be of little consequence. In any event, it seems that certain findings as they relate to these exhibits should at this juncture of the proceedings be made.

In each claim in suit, the plaintiff's expert contends that the elements in the defendant's machine operate in the same way that the elements do in the plaintiff's disclosure within the meaning of the claim and perform the same purpose in the same way. It is necessary to state here and now that the findings of this court are that all the elements and functions of claims 1, 2, 5, 6, and 7 asserted in the Romine patent 2,847,808 are found in defendant's accused machine, patent 3,001,345. It consequently follows that there is no doubt in the court's mind that there is an infringement of the plaintiff's machine.

The defendant's expert contends that the mechanical elements of claims 1, 2, 5, 6, and 7 of the Romine patent 2,847,808 are not found in defendant's machine. With this premise the court cannot agree. Defendant's expert further contends all of the elements and functions called for by the claims in suit of the Romine patent 808 are found literally and in the same operating combination in the prior arts patents, Gribner 2,393,102 and Field 2,-628,753. He also contends that the defendant's accused machine follows the teachings of the prior art of Henebergh, patent 1,069,253, and Field, patent 2,628,-753, but does not mention the prior art of the Gribner patent. Again, the court must agree and finds that the expert is correct insofar as the claims of the 808 patent do anticipate the prior art patents of Gribner and Field.

All of the machines herein referred to except the Henebergh patent involve themselves with the packaging of what is commonly referred to as nursery stock. A study of the preambles of the respective patents involved in this case and prior art patents shows there is a desire on the part of all to package different types of nursery stock. The prior art patent of Gribner would appear to be most analogous to the machines involved in this suit. All of the patents involved herein have some type of a support arrangement; all have some type of a con-

tainer which opens and closes, and all have some type of a pusher that eventually places the nursery stock in a bag with some type of preservative material ready for the consumer's use. The container in the prior art patents is shown by the exhibits herein displayed indicating some type of a rectangular receptacle wherein the product to be packaged is placed with material for packing and is then eventually covered by another rectangular object which compresses and holds the roots and material together while a plunger pushes them into a sack.

The greatest hubbub in this case involves what this court chooses to call a container for the roots and packing substance. The plaintiff refers to its machine as having a troughlike means secured to a support. The defendant calls its container shoes, one of which remains stationary and the other one pushing the packaging material and the roots together on a table. The prior arts merely place theirs in what appears to be somewhat of a rectangular shaped receptacle. All of the machines employ a pusher which is U-shaped in form except the prior art Gribner patent. It appears to have a solid end for its pusher. It is the finding of this court that whether or not they are called troughlike or shoelike or something else they in substance perform the same function, operate in substance the same way, and insofar as the plaintiff's and defendant's machines are concerned produce a cylindrical package of about the same quality and condition.

In the 808 machine, the trough has a cover which is made in two parts and is for the dual purpose of compressing the preservative material about the roots and for holding it compressed while it is inserted into the bag. The plant and the preservative are put into the troughlike element and the cover element is moved down to compress the root and preservative into a cylindrical mass. The pusher element pushes the roots and compacted preservative material into the bag. The defendant's machine uses a pair of curved shoes which are associated with a loading table. The shoes are oppositely arranged on the table with their concave surfaces facing each other so as to form a tube when brought together. The plant roots and preservative material are initially placed on the table between the shoes, and on movement of one shoe toward the other shoe, the material is rolled along the table toward and against the other shoe so as to be received and compacted between the shoes when the shoes are in abutting engagement. After the shoes are closed to form a cylindrical mass, the cylinder is tilted upwardly relative to the table and a bag container is mounted on it. The pusher then pushes the compacted material into the container.

A study of the prior art patents, Gribner and Field, in combination reveals they perform in substance the same result except that it has been proven in this case that the package and end product is not nearly so satisfactory as the end product produced by the plaintiff's and defendant's machines.

Using the term trough or troughlike means in its usual manner and without a strained interpretation. This court is unable to state that its meaning would be any different than the use of cylindrical shoes as indicated in the accused machine. Universal Oil Products Co. v. Globe Oil & Refining Co., 7 Cir., 137 F. 2d 3, affirmed 322 U.S. 471, 64 S.Ct. 1110, 88 L.Ed. 1399. Unquestionably, the defendant's machine is identical with the infringed machine in the result obtained. This appears to be without dispute. The court concludes that the means of attaining the result and the manner in which the different parts operate and cooperate to produce the result are in substance the same. The court feels without doubt that there is infringement. McDonough v. Johnson-Wentworth Co., 30 F.2d 375 (8th Cir.); Trico Products Corporation v. Delman Company, D.C., 199 F.Supp. 231; Westinghouse v. Boyden Power Brake Co., 170 U.S. 537, 18 S.Ct. 707, 42 L.Ed. 1136.

This court could dwell at length on the matter of infringement but, as has been indicated in the beginning, it would seem to be an idle ceremony by reason of what

will now occur as it relates to the issues of the counterclaim involving validity.

The defendant relies upon the Gribner patent and the Field patent as being in complete anticipation of claims 1, 2, 5, 6, and 7 of the 808 patent. The Gribner patent described a fern packaging machine. The Field patent is relied on as a reference teaching the use of a U-shaped pusher element.

■ The test for determining if a reference anticipates a claim of a patent is whether the reference contains within its four corners adequate directions for the practice of the patent claim invalidated. Stated another way, the reference must disclose all the elements of the claimed combinations, or their mechanical equivalents, functioning in substantially the same way, to produce substantially the same result. Both parties in their briefs agree that this is the correct test.

Because of the Gribner patent, the plaintiff had some difficulty in obtaining the 808 patent. In May 1958, the Patent Office rejected all the claims in the 808 patent saying:

> "The applicant in order to use the Gribner mechanism to enclose the roots of trees in bags has shaped the pusher 35 of Gribner so that it will not interfere with the branches of the tree as it operates to push the roots of the tree into the bag. The Malmstrom patent discloses an ejecting plunger 26, shaped to avoid the filler element 47 and used to push the compacted material into the cover 51. It is considered merely a matter of design to shape the plunger 26 of Malmstrom to avoid a part of any article being packaged, for example, trees, and such a plunger could be used equally well in the Gribner mechnism."

Thereafter, the 808 claims were cancelled and new claims were filed and the plaintiff argued that:

> "The art of record was discussed but in none of the patents was a disclosure to be found which teaches the packing of the roots of plants having branches extending therefrom.

> The patent to Gribner discloses a device for packing ferns in a bag from a tray, the ferns being entirely disposed within the bag. The Thornton patent discloses a tube for packing granules about a coiled resistance wire within a tube.

> Since none of the teachings of the patents alone are combined and anticipate the specific packing and pusher structure recited in the claims, it is submitted that claims 29 to 34, inclusive, are patentable and allowable."

It is clear that the 808 patent was issued because it taught a pusher structure that packed roots of plants having branches extending and did pack the root mass of the plant without interfering with the extended branches and limbs. The other elements of the 808 patent were, as the Patent Office clearly indicated, anticipated by the Gribner patent. What the Patent Examiner did not have before him was a reference showing a U-shaped pusher which would push the roots into the bag without scarring the bark of plants to be packaged. The analogous element in Gribner was not U-shaped because it was not designed to pack plants having branches extending from the roots.

It is the Field patent which the defendant claims does teach such a U-shaped pusher element and the defendant claims that the combination of the Gribner and Field patents anticipates all the claims in the 808 patent.

In determining whether the patent was valid, Title 35, Sections 101, 102, and 103 must be considered. In Graham v. John Deere Company, 86 S.Ct. 684, the court said:

> "The Act sets out the conditions of patentability in three sections. An analysis of the structure of these three sections indicates that patentability is dependent upon three explicit conditions: novelty and utility as articulated and defined in § 101, and § 102, and nonobviousness, the new statutory formulation, as set out in § 103."

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined."

 In this case, the court must conclude that the 808 patent is not novel under Sections 101 and 102. The court believes that when the Field and Gribner patents are considered together they are a complete anticipation of the plaintiff's patent. The mere change of design to effect the U-shaped pusher of the 808 patent presents no operative mechanical distinctions. In the present case, the individual elements of the invention were not only not novel per se, but the prior art also taught the type of combination present in the 808 patent. Assuming arguendo that there has been failure of others in this area, a strong need in the industry and commercial success with the 808 machine, still this together with the presumption of validity cannot here help the 808 patent where the invention, as limited by the Patent Office, rests upon exceedingly small and quite non-technical mechanical differences in a device which was old in the prior art. Plaintiff claims the prior art cited by the defendant is non-analogous but the court finds it to be closely related and pertinent. See II Walker, Patents, Section 260. Also to be relevant references, the prior art machines need not be capable of exactly what the 808 machine can do.

The 808 patent is also invalid under Section 103. The scope of the prior art is large in this case as demonstrated by the several types of packing machines. Also, the differences between the prior art patents is not great and the court cannot say that great mechanical skill would be required in the design of such a packing machine where the prior art references are such as are present in this case. The court finds no nonobvious facets in the 808 patent. The differences between the 808 patent and the prior art are such that the differences would have been obvious at the time the 808 machine was designed to a person having ordinary skill in the art to which said subject matter pertains.

The court has also considered United States v. Adams, 86 S.Ct. 708, but that case is factually much different than the present case.

 The matter of the presumption of validity of the 808 patent does not go unnoticed by the court. The presumption of validity by reason of Title 35 U.S.C. § 282 is, of course, rebuttable. Daniel v. O. & M. Mfg. Co., D.C., 105 F.Supp. 336. However, if there were reasonable doubts they perhaps would be resolved in favor of the defendant. Ezee Stone Cutter Mfg. Co. v. Southwest Indus. Products, Inc., CA 8, 262 F.2d 183; Long v. Arkansas Foundry Co., CA 8, 247 F.2d 366.

 The file wrapper, more particularly defendant's Exhibit A, as it relates to the 808 patent contains a history which in many aspects cannot be comforting to the plaintiff. As recently stated in Graham v. John Deere Co., supra, 86 S.Ct. at page 702:

"It is, of course, well-settled that an invention is construed not only in the light of the claims, but also with reference to the file wrapper or prosecution history in the Patent Office. Hogg v. Emerson, 11 How. 587, 13 L.Ed. 824 (1850); Crawford v. Heysinger, 123 U.S. 589, 8 S.Ct. 399, 31 L.Ed. 269 (1887). Claims as allowed must be read and interpreted with reference to rejected ones and to the state of the prior art; and claims that have been narrowed in order to obtain the issuance of a patent by distinguishing the prior art cannot be sustained to cover that which was previously by limitation eliminated from the patent. Powers-Kennedy Contracting Corp. v. Concrete Mixing & Conveying Co., 282 U.S. 175, 185–186, 51 S.Ct. 95, 99, 75 L.Ed. 278 (1930); Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 220–221, 312 U.S. 654, 61 S.Ct. 235, 239–240, 85 L.Ed. 132 (1940)."

is pertinent here. There has been under this history no consideration given to the Field patent and, of course, this weakens the presumption of the validity of the patent when the prior art which is a relevant issue has not been considered by the Patent Office. The standard of patentability in the Patent Office is below that required by the courts.

"It is, no doubt, true that this Court is applying higher standards than it formerly did for determining whether patented improvements of practical value and which have met with commercial success involve invention or only mechanical skill." Trico Products Corp. v. Delman Corporation, 180 F.2d 529, C.A. 8, 1950.

Again, the Eighth Circuit has also indicated its position when a combination of claims is to be considered.

" * * * the amount of originality and ingenuity, over and beyond novelty and utility, which will constitute invention necessary to sustain a patent for a combination of old elements in a crowded art, has increased." Briggs & Stratton Corp. v. Clinton Machine Co., Inc., 247 F.2d 397, CA 8, 1957.

"The test for determining if a reference anticipates a claim of a patent is whether the reference contains within its four corners adequate directions for the practice of the patent claim invalidated. * * * Stated another way, the reference must disclose all the elements of the claimed combination, or their mechanical equivalents, functioning in substantially the same way to produce substantially the same result." Straussler v. United States, 339 F.2d 670, 168 Ct.Cl. 852, 1964.

The court believes there is no question that the patents, both prior art and the machines immediately involved in this cause, are analogous. Most assuredly, there is a similarity as it relates to elements and purpose. A. J. Deer Co., Inc., v. United States Slicing Mach. Co., 7 Cir., 1927, 21 F.2d 812, at page 813:

"We are of opinion that whether arts or uses are analogous depends upon the similarity of their elements and purposes. If the elements and purposes in one art are related and similar to those in another art, and because and by reason of that relation and similarity make an appeal to the mind of a person having mechanical skill and knowledge of the purposes of the other art, then we are of opinion that such arts must be said to be analogous, and, if the converse is true, they are non-analogous arts."

■ Bearing on the question of validity, the plaintiff has urged the commercial success of the 808 invention. In order for this to accrue to the benefit of the plaintiff in this cause, it is incumbent to establish a patentable novelty. A patentable novelty is established in determining presence of invention. The rule is as follows, to-wit:

"The general rule concerning commercial success is that when the patented subject matter is found to be novel, and the question of the presence or absence of invention is in real doubt, then commercial success, which is evidence to some extent of utility, may or may not become a factor in tipping the balance in favor of sustaining the patent. But where there is room for reasonable doubt, the assertion of commercial success is not to be used, first, to create a doubt, and second, to resolve it." Bishop & Babcock Mfg. Co. v. Fedders-Quiglan Corp., 159 F.Supp. 815, D.C. WNY, 1957.

Furthermore, the criteria is announced in the most recent case of Copease Manufacturing Co. v. Cormac Photocopy Corp., D.C., 242 F.Supp. 993, 1006.

■ This record in substance demonstrates clearly that both the Romine machine and the Zeller machine are needed in the industry. It is apparent that they are both fulfilling a vital need in the nursery field. It has been said in a number of cases that in actions involving validity and infringement of patents there are three interested parties: the patent holder, the user of the accused device, and the public. Among these individuals, the interest of the public is

**140**

paramount. Hycon Manufacturing Company v. H. Koch & Sons, 9 Cir., 219 F.2d 353. It would be for the public's good that both of these machines could be on the market.

The court having indicated in its first approach to this problem that there could be no infringement of an invalid patent, nevertheless has concluded that if there had been validity there would be unquestionable infringement by the defendant. Perhaps by reason of the pleadings herein it is too bad that the validity of the defendant's patent was not in some way determined. In any event, the court has clearly concluded that the defendant has been successful in its counterclaim and that the Romine patent bearing No. 2,847,808 is invalid.

It will be ordered, adjudged, and decreed that plaintiff's prayer for preliminary and permanent injunctive relief, accounting for profits and damages, assessment of costs against the defendant, and award of reasonable attorneys' fees be denied and the Complaint dismissed.

It will further be ordered, adjudged, and decreed that plaintiff's patent No. 2,847,808, herein referred to as the 808 patent, is invalid.

It will further be ordered, adjudged, and decreed that defendant's prayer for declaratory judgment that the patent bearing No. 3,001,345 is not and does not infringe plaintiff's patent or any claims thereof be denied.

It will further be ordered that all requests for attorneys' fees by plaintiff and defendant in said cause will be denied. Hanks v. Ross, D.C., 200 F.Supp. 605.

It will further be ordered, adjudged, and decreed that each of the parties to this cause of action shall pay one-half of the costs in this action.

It is ordered that the foregoing shall constitute the findings of fact, conclusions of law, and Order for judgment in this case. Rule 52(a) of the Federal Rules of Civil Procedure.

### JUDGMENT

Pursuant to Memorandum filed herein,

It is hereby ordered, adjudged, and decreed that plaintiff's prayer for preliminary and permanent injunctive relief, accounting for profits and damages, assessment of costs against the defendant, and award of reasonable attorneys' fees is hereby denied and the Complaint is hereby dismissed.

It is further ordered, adjudged, and decreed that plaintiff's patent No. 2,847,-808 is invalid.

It is further ordered, adjudged, and decreed that defendant's prayer for declaratory judgment that the patent bearing No. 3,001,345 is not and does not infringe plaintiff's patent or any claims thereof is hereby denied.

It is further ordered, adjudged, and decreed that all requests for attorneys' fees by plaintiff and defendant are hereby denied.

It is further ordered, adjudged, and decreed that each of the parties to this cause of action shall pay one-half of the costs in this action.